UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                 :
LISA GUTTILLA,                     :
                                 :
                   Plaintiff,     :
                                 :               14-CV-156 (JPO)
                -v-              :
                                 :        <u>OPINION AND ORDER</u>
CITY OF NEW YORK, et al.,    :
                                 :
                   Defendants.   :
                                 :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

       Lisa Guttilla, proceeding *pro se*, alleges that various parties violated her rights under federal and state law when her job as a tenured teacher in the New York City school system was terminated after accusations emerged that she had had inappropriate sexual contact with a student.  Guttilla seeks monetary, declaratory, and injunctive relief.  Before the Court are four motions to dismiss the complaint.  For the reasons that follow, the motions are granted and the case is dismissed.

**I.     Background**[1]

       In the fall of 2009, Lisa Guttilla was employed full-time as a health and physical education teacher at James Madison High School in Brooklyn (Dkt. No. 1 ("Compl.") ¶ 18 & Ex. 1), and part-time as the girls' varsity volleyball coach at Poly Prep Country Day School ("Poly Prep"), a private school also in Brooklyn (*id.* ¶¶ 18, 31).  She had been a tenured teacher in the New York City school system for 17 years.  (*Id.* ¶ 18.)

---

[1] The Court takes the following facts, pleaded in the complaint, as true for the purpose of resolving the motions to dismiss.

On January 21, 2010, allegations emerged that Guttilla had engaged in inappropriate sexual conduct with a member of the Poly Prep girls' varsity volleyball team (the "Student").[2] (*Id.* ¶ 31 & Ex. 1 at 2.)  Guttilla was arrested and criminally charged with three counts of sexual abuse in the third degree and one count of endangering the welfare of a child.  (*Id.* ¶¶ 27, 31 & Ex. 2 at 5-7.)  The criminal complaint stated that Guttilla "did kiss [the Student] on the lips, touch [the Student's] breast and buttocks, and have [the Student] touch [Guttilla's] breast and buttocks" without the Student's consent.  (*Id.* Ex. 2, at 6-7.)  Guttilla maintained, and maintains today, that these allegations are false.  (*Id.* ¶ 34.)

During the pendency of the criminal proceedings, the New York City Department of Education ("Department") also took action.  It instituted proceedings against Guttilla pursuant to New York Education Law § 3020-a and the Collective Bargaining Agreement ("CBA") between the Department and Guttilla's labor union, the United Federation of Teachers ("UFT").  (*Id.* ¶ 32 & Ex. 2 at 2.)  Pursuant to the CBA, Guttilla may be temporarily removed from payroll with a finding of probable cause that she committed "serious misconduct."  (*Id.* Ex. 2 at 2-3.)  "Serious misconduct" is defined to include "any crime involving . . . sexual abuse of a minor or student." (*Id.* Ex. 2 at 2.)  The Department may then seek to permanently terminate Guttilla's employment by holding a § 3020-a hearing to determine whether she is in fact guilty of the charges.  (*See id.* Ex. 4 at 9, 30 & Ex. 5.)

On March 18, 2010, Guttilla was subject to a probable cause hearing before arbitrator Martin Scheinman.  (*Id.* Ex. 3.)  She was represented by Defendant Steven Friedman, a staff

---

[2] The complaint states that these accusations emerged on January 21, 2009.  (Compl. ¶ 31.)  This appears to be a typographical error as the context and attached exhibits indicate that the accusations emerged on January 21, 2010.  The date of the initial allegations does not affect the Court's analysis of Guttilla's complaint.

attorney for the New York State United Teachers ("NYSUT"), "the legal arm of [UFT]." (*Id.* ¶¶ 23-24, 34, 40 & Ex. 3.)[3]  At the hearing, the Department argued that under the terms of the CBA, the criminal charge against Guttilla established probable cause that she had sexually assaulted a student.  (*Id.* ¶ 38 & Ex. 3 at 6-7.)  Friedman argued on behalf of Guttilla that the criminal complaint was not sufficient, and that, under the terms of the CBA, the Department was required to produce testimony of a Department investigator, along with signed statements by the victim or witnesses.  (*Id.* ¶¶ 39-40 & Ex. 3 at 8-9.)

Scheinman rejected Friedman's argument.  (*Id.* ¶ 39 & Ex. 2 at 11-13.)  He noted that under the CBA, a "rebuttable presumption" of probable cause that sexual misconduct was committed exists where "the Special Commissioner of Investigations ('SCI') substantiates allegations of sexual misconduct[,] *or* a tenured pedagogue has been charged with criminal conduct based on act(s) of sexual misconduct."  (*Id.* ¶ 39 & Ex. 2 at 11-12.)  He interpreted the CBA as requiring substantiation by an investigator only where the Department relied on the former condition; here, the latter condition had been met.  (*Id.* ¶ 39 & Ex. 2 at 11-13.)  Accordingly, Scheinman held that the criminal charge against Guttilla created a presumption of probable cause, which presumption Guttilla had failed to rebut at the hearing.  (*Id.* ¶ 39 & Ex. 2 at 13.)  Consistent with this ruling, Guttilla was suspended from Department payroll.  (*Id.* ¶¶ 39-40 & Ex. 2 at 13.)

---

[3] The NYSUT is the statewide body of local union UFT, and, as such, provides free legal representation to UFT members.  The Court makes note of this fact, taken from the NYSUT Defendants' motion to dismiss (Dkt. No. 16 at 3), for background purposes only; it is not material to this decision.

Fifteen months later, the criminal charges against Guttilla were dismissed, and she was returned to payroll.[4]  (*Id.* ¶¶ 33, 40.)  Soon thereafter, Defendant Theresa Europe, Director of the Administrative Trials Unit of the Department Office of Legal Services, requested an investigation into the sexual misconduct allegations.  (*Id.* ¶ 35 & Ex. 1.)  Jeffrey Anderson conducted the investigation, and the Department sent his findings to Department Chancellor Dennis Walcott, who is also a defendant in this action.  (*Id.* Ex. 1.)  Anderson reported that Department investigators had interviewed the Student's mother and the NYPD detective who had spoken with the Student in connection with the criminal charges.  (*Id.*)  Anderson also reviewed the Student's cell phone records, which showed over nine thousand text messages and three hundred calls between the Student's and Guttilla's cellular phones between December 1, 2009, and January 20, 2010.  (*Id.*)  Anderson concluded that the allegations were substantiated: "Guttilla . . . had inappropriate sexual contact with a 14-year-old female student . . . enrolled at [Poly Prep]."  (*Id.*)

On the basis of Anderson's investigation, Guttilla was subject to a second probable cause hearing on June 18, 2012, again before Scheinman and at which she was again represented by Friedman.  (*Id.* ¶ 41-42 & Ex. 4.)  Anderson was present and summarized his investigation.  (*Id.*)  Friedman objected that Anderson's report was "based not on single hearsay, but on triple hearsay. . . . We don't have a witness.  We don't have [the Student].  We have nothing."  (*Id.* Ex. 4 at 8.)  Scheinman rejected this argument, finding probable cause that Guttilla had committed sexual misconduct, and suspended her from payroll.  (*Id.* ¶ 41.)

---

[4] Under the CBA, Guttilla was to be removed from payroll until the criminal action was resolved. (Dkt. No. 38 ("Opp."), Ex. A at 51.)

Arbitrator Eleanor Glanstein was assigned to conduct a subsequent § 3020-a hearing.  (*Id*. ¶ 42 & Ex. 4 at 9, 30.)  This hearing never took place.  Instead, on June 29, 2012, Guttilla was "forced" and "harassed" to sign a stipulation of settlement ("Stipulation").  (*Id*. ¶¶ 43-44 & Ex. 5.)  In the Stipulation, Guttilla agreed to resign her tenure teaching position and to "knowingly waive [her] right to make any legal or equitable claims or to initiate legal or administrative proceedings of any kind against [the Department] or against [its] employees, relating to or arising out of these proceedings, except to enforce this Stipulation of Settlement."  (*Id*. Ex. 5 ¶ 4.)  Guttilla also represented that she had "entered into this agreement freely, knowingly and openly, without coercion or duress and that she has voluntarily waived all statutory, contractual or constitutional rights that she may have held in this matter for a hearing in accordance with Education Law § 3020-a."  (*Id*. ¶ 6)

Guttilla now alleges that various people violated her rights under federal and state law in connection with the termination of her job.  She sues the City of New York and four employees of the Department of Education: Walcott and Europe, mentioned above, as well as Joseph Gogliormella and Jodi Cohen, Principal and Assistant Principal, respectively, of James Madison High School (collectively, the "Department Defendants").[5]  She also asserts claims against three union officials: Friedman, mentioned above; UFT President Michael Mulgrew; and Claude

---

[5] Walcott and Europe argue that they were not properly served as regards the claims against them in their individual capacities, and thus that they were not properly made parties to this action. (Dkt. No. 33 at 3 n.4-5 & 22.)  Although failure to effect proper service may provide an independent basis for dismissal under Rule 4(m), the Court need not resolve this issue because, as explained *infra*, the complaint fails to make out a claim against Walcott or Europe. *See Moore v. City of New York*, No. 08 Civ. 8879 (PGG), 2010 WL 742981, at *5 n.4 (S.D.N.Y. Mar. 2, 2010).

Hersh, Assistant General Counsel for the NYSUT (collectively, the "Union Defendants").[6]

Finally, Guttilla sues David Harman, Headmaster of Poly Prep.  Before the Court are four

motions to dismiss the complaint.  (Dkt. Nos. 16 (Hersh & Friedman motion), 22 (Harman

motion), 24 (Mulgrew motion), 32 (Department Defendants' motion).)[7]

## II.    Legal Standards

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in

the complaint as true and draw all inferences in the non-moving party's favor."  *LaFaro v. N.Y.*

*Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks

omitted).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim

to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the pleaded factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  "This standard is not akin to a probability requirement, but it asks for

more than a sheer possibility that a defendant has acted unlawfully."  *Vaughn v. Air Line Pilots*

*Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation

marks omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's

liability, it stops short of the line between possibility and plausibility of entitlement to relief."

---

[6] Hersh and Friedman also argue that they were not properly served.  (Dkt. No. 16 at 12-13.)  As with Walcott and Europe, the Court need not resolve this issue because the complaint fails to make out a claim against Hersh or Friedman.

[7] The Court elects not to convert the Department Defendants' motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 56.  *See Ansonia Tenants' Coal., Inc. v. Ansonia Assocs.,* 163 F.R.D. 468, 470 (S.D.N.Y.1995) ("The decision of whether to convert a motion to dismiss into a motion for summary judgment is within the court's discretion . . . .").  Accordingly, in deciding the motions to dismiss, the Court does not consider any exhibits other than those permissible under Rule 12(b)(6).

*Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  In determining whether a plaintiff has pleaded facts sufficient to survive a motion to dismiss, a court will not consider mere conclusory allegations that lack a factual basis.  *Hayden v. Paterson*, 594 F.3d 150, 160-61 (2d Cir. 2010).  A plaintiff's complaint "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed."  *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680) (alterations and internal quotation marks omitted).

Guttilla alleges various violations of the civil rights statutes.  "As the Second Circuit has repeatedly held, 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'"  *Bender v. City of New York*, No. 09 Civ. 3286 (BSJ), 2011 WL 4344203, at *1 (S.D.N.Y. Sept. 14, 2011) (quoting *Barr v. Abrams*, 801 F.2d 358, 363 (2d Cir. 1987)).

In assessing the sufficiency of the complaint, a court may consider "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations and internal quotation marks omitted).  "Integral" documents are those "either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993)).  In order for a document to be "integral," however, a plaintiff must actually have relied on its terms and effect in drafting the complaint; mere possession or notice is not enough.  *Id.*

Finally, Guttilla's *pro se* complaint is subject to more lenient standards than a complaint filed by a represented party.  "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

## III.   Discussion

### A.   Claims Against the City of New York

The complaint does not state any claims against the City of New York that are separate from claims against employees of the Department of Education.  Case law makes clear, however, that the City and the Department are distinct legal entities, and that the City cannot be held liable for the acts of the Department or its employees.  *See Fierro v. City of New York*, 591 F. Supp. 2d 431, 446 (S.D.N.Y. 2008) ("Courts in this circuit as well as the New York State courts have made clear that the City of New York and [the Department of Education] are separate legal entities.  Although amendments to the New York Education Law in 2002 provided for greater mayoral control over [the Department], the legislative changes do not abrogate the statutory scheme for bringing lawsuits arising out of torts allegedly committed by [the Department] and its employees, and the City of New York cannot be held liable for those alleged torts.  Because plaintiff alleges acts committed by [the Department] and its employees, the City of New York is not a proper party." (citing cases) (footnotes and internal quotation marks omitted)), *rev'd in part on other grounds*, 341 F. App'x 696 (2d Cir. 2009); *see also Falchenberg v. N.Y.C. Dep't of Educ.*, 375 F. Supp. 2d 344, 347 (S.D.N.Y. 2005) ("While factual allegations must be construed in a light most favorable to the Plaintiff, the issue of whether or not [the Department of

Education] is a department of the City is a legal issue.  In the absence of any allegations demonstrating participation by the City, the complaint fails to state a cause of action against it.").  Accordingly, the claims against the City are dismissed.

### B.   Section 1983 Claims

Guttilla alleges that all Defendants are liable under 42 U.S.C. § 1983 for violating her constitutional rights.  "In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

### 1.   Under Color of State Law

"To act under color of state law or authority for purpose of section 1983, the defendant must have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)) (internal quotation marks omitted).  "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  *West*, 487 U.S. at 50.  "[A]cts of officers in the ambit of their personal pursuits are plainly excluded."  *Pitchell*, 13 F.3d at 548 (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)) (internal quotation marks omitted).

A § 1983 claim against a private entity, however, must "allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act."  *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (internal quotation marks omitted).  "Put differently, a

private actor acts under color of state law when the private actor is a willful participant in joint

activity with the State or its agents." *Id.* (quoting *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307,

324 (2d Cir. 2002)) (internal quotation marks omitted). "A merely conclusory allegation that a

private entity acted in concert with a state actor does not suffice to state a § 1983 claim against

the private entity." *Ciambriello*, 292 F.3d at 324. "Rather, a plaintiff must allege that the private

entity and state actors 'carried out a deliberate, previously agreed upon plan,' or that their

activity 'constitute[d] a conspiracy or meeting of the minds.'" *Johnson v. City of New York*, 669

F. Supp. 2d 444, 450 (S.D.N.Y. 2009) (quoting *Dahlberg v. Becker*, 748 F.2d 85, 93 (2d Cir.

1984)) (alteration in *Johnson*).

Under this standard, the complaint fails to plausibly allege that Harman and the Union

Defendants acted under color of state law such that they are liable under section 1983. First,

none of these defendants are state actors. Harman is the Headmaster of "Poly Prep, a private

school." (Compl. ¶¶ 28, 31.) *See Rendell-Baker v. Kohn*, 457 U.S. 830, 832, 840 (1982)

(holding that a private school was not a state actor for the purpose of 42 U.S.C. § 1983, even

where the school was largely funded by the state). Mulgrew "was and is the President of the

UFT" (Compl. ¶ 26), Hersh "was the Assistant General Counsel to . . . NYSUT, the legal arm of

[UFT]" (*id.* ¶ 23), and Friedman was the NYSUT attorney who represented Guttilla in the

probable cause hearings (*id.* ¶¶ 24, 34, 40, 42). The complaint does not allege that Mulgrew,

Hersh, and Friedman, as employees of UFT or NYSUT, are state employees. Indeed, "[l]abor

[u]nions generally are not state actors." *Marrero v. City of New York*, No. 02 Civ. 6634 (DLC),

2003 WL 1621921, at *4 (S.D.N.Y. Mar. 28, 2003) (citing *Ciambriello*, 292 F.3d at 323). The

fact that these unions represent Guttilla, a public employee, does not make them state actors. *See*

*id.*; *Ciambriello*, 292 F.3d at 323 (holding that a union of county employees was not a state actor).

Second, the complaint makes only conclusory allegations that these defendants conspired with a state actor.  (Compl. ¶¶ 2, 73.)  Absent from the complaint are any facts demonstrating that Harman or the Union Defendants acted in concert with state actors to violate Guttilla's constitutional rights.[8]  Absent such specific factual allegations, Guttilla cannot establish that these defendants were acting under color of state law—a necessary element of a § 1983 claim.  Accordingly, Guttilla's section 1983 claims against Harman and the Union Defendants are dismissed.[9]

Only the four Department Defendants remain.  There can be no dispute that Department Chancellor Walcott, Department attorney Europe, James Madison High School Principal Gogliormella, and Assistant Principal Cohen are state actors.  The Department is a "public employer" (Compl. ¶ 20), and James Madison High School is part of the "NYC school system" (*id.* ¶ 18).  Moreover, Guttilla sues the Department Defendants for actions in their capacity as public employees and not for acts done in their personal pursuits.  The question, then, is whether Guttilla plausibly alleges that these Defendants violated her constitutional rights.

---

[8] Guttilla's factual allegations against Harman are, in their entirety, that he "told [Guttilla's] colleagues . . . to have no contact with her or they would lose their jobs," and that he refused to speak with "the private investigator hired to look into the allegations in the matter reviewed here."  (Compl. ¶ 28.)

[9] The Court notes that the conclusory allegations that the Union Defendants were conspiring with state actors "ring especially hollow in light of the adversarial relationship" between the Department and the unions.  *Ciambriello*, 292 F.3d at 324.  Indeed, the proceedings in which Guttilla alleges that the Union Defendants conspired with the Department—the probable cause hearings—placed the Department and the Union Defendants in adversarial positions, as the NYSUT was representing Guttilla, a Department employee and UFT member, in connection with a grievance initiated by the Department.  *See id.*

### 2.      Violation of Guttilla's Constitutional Rights

Guttilla alleges that the Department Defendants violated her right to procedural due process and equal protection under the Fifth and Fourteenth Amendments; her right to free speech, freedom of association, and freedom of the press under the First Amendment; and her rights under the Seventh Amendment.  (Compl. ¶ 55.)

As a preliminary matter, to the extent that Guttilla sues the Department Defendants in their official capacities as agents of the Department, she must show that they acted pursuant to official policy or custom.  *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) ("[W]hen the defendant sued for discrimination under . . . § 1983 is a municipality—or an individual sued in his official capacity—the plaintiff is required to show that he challenged acts were performed pursuant to a municipal policy or custom." (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)) (internal citation omitted)).  Guttilla, however, has failed to allege in the complaint that the Department Defendants had an official policy or custom that resulted in a deprivation of her constitutional rights.[10]  Furthermore, even if her complaint alleged a policy or custom on the part of the Department, she has failed to state a plausible claim that her constitutional rights were violated.

---

[10] Guttilla states in a conclusory manner that Defendants have engaged in "a pattern, practice, custom and policy of bad faith, harassment, defamation and intentional infliction of emotional distress" (Compl. ¶ 4), and "a course of action and behavior rising to the level of a policy and condoned practice" (*id.* ¶ 64).  She also includes in her description of each defendant the following boilerplate language: "[Defendant] was responsible for creating and implementing policies carried out in accordance with the U.S. Constitution and all federal, state, and city laws, statutes, ordinances, regulations, policies, customs and usages of the State of New York."  (*Id.* ¶¶ 21-28.)  These conclusory allegations are insufficient.

### a.   Due Process

Guttilla alleges that she was denied due process in violation of the Fifth and Fourteenth Amendments in three instances: once at each of the probable cause hearings that resulted in her temporary suspension without pay, and a third time when she was coerced to sign the Stipulation, resulting in the permanent termination of her employment.  (Compl. ¶¶ 66-68.)

### i.   Suspension without pay

"A procedural due process claim is composed of two elements:  (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process."  *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012); *see also Jones v. City of New York*, No. 12 Civ. 9144 (PAE), 2013 WL 4028183, at *6 (S.D.N.Y. Aug. 8, 2013) (same).  On the first element, a tenured public school teacher has a property interest in her continued employment with pay. *See O'Connor v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005) ("Although the Supreme Court has not decided whether procedural due process protections extend to employee discipline short of termination, we have [determined that they do extend to] a tenured state employee's suspension without pay." (internal citation omitted)); *Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) (holding that the district judge "properly determin[ed] that [the defendant's] decision to suspend [the plaintiff] without pay implicated a protected property interest").  Therefore, Guttilla could be suspended without pay only if she was given due process of law.

To determine what, if any, procedural protections were due here, the Court must consider: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; [and] (3) the government's interest, including the possible burdens of alternative procedures."  *O'Connor*,

426 F.3d at 197 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see also Mathews*, 424

U.S. at 334 ("Due process is flexible and calls for such procedural protections as the particular

situation demands." (internal alteration and quotation marks omitted)).  The Supreme Court

considered these factors as they applied to tenured public employees in *Cleveland Board of*

*Education v. Loudermill*, 470 U.S. 532, 542-45 (1985), and held that such employees are entitled

to a hearing prior to having their positions terminated, but that the hearing "need not be

elaborate."  *Id.* at 545 ("In general, 'something less' than a full evidentiary hearing is sufficient

prior to administrative action." (quoting *Mathews*, 424 U.S. at 343)).  The "tenured public

employee is entitled to [no more than] oral or written notice of the charges against him, an

explanation of the employer's evidence, and an opportunity to present his side of the story."  *Id.*

at 546; *Ingber v. N.Y.C. Dep't of Educ.*, No. 14 Civ. 3942 (JMF), 2014 WL 6888777, at * 4

(S.D.N.Y. Dec. 8, 2014) (applying the *Loudermill* standard to tenured New York City public

school teachers).  The Court noted that this holding "rests in part on the provisions of [state] law

for a full post-termination hearing."  *Loudermill*, 470 U.S. at 546.

Unlike the employees in *Loudermill*, Guttilla's employment was suspended, not

terminated.  Nonetheless, the pre-termination due process requirements articulated in

*Loudermill*—requirements that are arguably higher than those for suspension without pay—were

satisfied here.  There is no dispute that Guttilla was given written notice of the charges against

her (Compl. ¶¶ 35, 42; Opp. Ex. 1 at 46, 51), and that she received an explanation of her

employer's evidence—at the first hearing, the criminal complaint, and at the second hearing,

investigator Anderson's testimony.  Guttilla also received, at each hearing, an opportunity to

respond to the Department's evidence through her attorney, who argued against a finding of

probable cause.[11]  (Compl. ¶ 40 & Exs. 3-4.)  This process provided precisely what the Supreme

Court mandated in *Loudermill*: "an initial check against mistaken decisions—essentially a

determination of whether there are reasonable grounds to believe the charges against [her] are

true and support the proposed action." 470 U.S. at 545-46.  Finally, as with the plaintiff in

*Loudermill*, Guttilla had the ability to contest her temporary suspension by way of a full § 3020-a

hearing, at which her culpability would be decided, resulting in either the permanent termination

of her position or her return to Department payroll.  This process—notice and an opportunity to

respond, along with a post-suspension hearing—satisfied the requirements of the Constitution.

In so holding, the Court rejects Guttilla's argument that she was entitled to specific

procedural protections at the probable cause hearings.  Guttilla contends that the Department was

required, at the first hearing, to produce an investigator and witnesses to supports its allegations

rather than simply presenting the criminal complaint filed against her in state court; and that she

should have been allowed, at the second probable cause hearing, to cross-examine the adverse

witnesses whom Anderson had interviewed during his investigation.[12]  (Compl. ¶¶ 30, 38.)

"[T]here is no requirement pursuant to the Fourteenth Amendment, that a specific procedure be

used, nor is a plaintiff entitled to the procedure of his or her choice.  Plaintiff is entitled only to

notice and 'an opportunity [to be heard] . . . at a meaningful time in a meaningful manner.'"

*Shub v. Hankin*, 869 F. Supp. 213, 217 (S.D.N.Y. 1994) (quoting *Boddie v. Connecticut*, 401

---

[11] Guttilla does not allege that she had no opportunity to respond.  She alleges only that her attorney would not let her speak.  (Compl. ¶¶ 34, 42.)  Such a claim may possibly sound in some other theory, but it does not constitute a violation of due process.

[12] The arbitrator determined that the CBA between Guttilla's union and the Department expressly prohibited cross-examination (Compl. Ex. 4 at 25; *see also id.* Ex. 2 at 4), and that the Department was not required to introduce the investigator's testimony when it had presented a criminal complaint to establish probable cause (*Id.* Ex. 2 at 11-13).

U.S. 371, 378 (1970)) (alteration in *Shub*); *see also Loudermill*, 470 U.S. at 545-46.  These requirements were satisfied here, and Guttilla's claim that she was denied due process prior to the temporary suspension of her teaching position is thus dismissed.

### ii.     Termination

Next, Guttilla argues that she was denied due process when she was coerced into signing the Stipulation and resigning from her tenured position.  Just as Guttilla possesses a constitutionally protected property interest in the unpaid suspension of her position without due process, she also possesses a property interest that protects her position against permanent termination without due process.  *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2003) ("This Circuit . . . has held that tenured public employees have a constitutionally protected property interest in their employment.").  Guttilla's claim nevertheless fails, as the procedure available to her after she signed the Stipulation satisfied the constitutional mandate.

"Where a plaintiff claims that he was denied a pre-deprivation hearing in the context of a 'coerced resignation,' 'it is hard to visualize what short of prior hearing the Constitution would require the employer to conduct,' because 'a coerced resignation does not involve a showing of cause,' and thus 'if there is no factual dispute between the employer and the employee, a hearing is meaningless.'"  *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 315 (S.D.N.Y. 2014) (quoting *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984)) (alterations omitted).  "In this context, 'due process is satisfied so long as the government provides a neutral adjudicator at a post-termination hearing.'"  *Id.* (quoting *Locurto v. Safir*, 264 F.3d 154, 171, 173 (2d Cir. 2001)) (alteration omitted); *see also Fortunato v. Liebowitz*, No. 10 Civ. 2681 (AJN), 2012 WL 6628028, at *5 (S.D.N.Y. Dec. 20, 2012) ("Subsequent decisions have followed *Giglio* and held that the

availability of a post-deprivation hearing in a case where a plaintiff alleges a coerced resignation satisfies the requirements of due process." (collecting cases)).

For state employees in New York, "[a]n Article 78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due process purposes." *Locurto*, 264 F.3d at 175. An Article 78 proceeding is a hearing in New York Supreme Court that permits a petitioner to "submit affidavits and other written proof of their claim, and where a triable issue of fact is raised, have a trial of the disputed issue, including constitutional claims." *Locurto*, 264 F.3d at 174. An Article 78 proceeding is sufficient for due process purposes "even though the petitioner [in an Article 78 proceeding] may not be able to recover the same relief that he could in a § 1983 suit." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996). Guttilla does not contest that she could have sought relief through an Article 78 proceeding. Although it is unclear from the complaint if she availed herself of that opportunity, whether she did is immaterial to the result here. The fact that Guttilla could have received a post-termination hearing under Article 78 satisfies her right to procedural due process. *See Giglio*, 732 F.2d at 1135 ("Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity."). Guttilla's due process claims against the Department Defendants are dismissed.[13]

---

[13] Guttilla also alleges that her due process rights were violated when the Department Defendants did not follow the requirements of Education Law § 3020-a. (Compl. ¶¶ 42, 44.) Due process, however, is not defined by state law, and the inadequacies Guttilla alleges do not rise to the level of a due process violation.

**b.**     **Abuse of Process, Equal Protection, First Amendment, and Seventh Amendment**

Guttilla also alleges that the Defendants are liable under § 1983 for abuse of process, and for violating her right to equal protection and her rights under the First and Seventh Amendments.  These claims all fail.  First, to plead an abuse of process claim under § 1983, Guttilla must allege the elements of an abuse of process claim under New York law.  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  Those elements are that the defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Id.*  Guttilla has failed to plead any facts in support of such a claim, particularly with regard to any collateral objective that Defendants intended to obtain through their use of legal process.  (*See* Compl. ¶¶ 71-75.)  Accordingly, the abuse of process claim is dismissed.

Next, as relevant to the equal protection claim, the complaint states only that Guttilla was removed from her teaching position "because she was a lesbian." (Compl. ¶ 36.)[14]  Guttilla fails to allege, as she must, specific facts that make this conclusory allegation plausible—facts "giving rise to an inference of discrimination on the basis of [her] membership in [a protected] class." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994); *see also Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (stating that the analysis of § 1983 equal protection

_____

[14] Sexual orientation is not a basis for a Title VII claim.  *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir. 2005) ("'The law is well-settled in this circuit and in all others to have reached the question that . . . Title VII does not prohibit harassment or discrimination because of sexual orientation.'" (quoting *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000)).  Thus, to the extent that Guttilla intends to state a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (*see* Compl. ¶ 55), that claim is dismissed.

claims for employment discrimination "is similar to that used for employment discrimination claims brought under Title VII"). Accordingly, the equal protection claim is also dismissed.

As to the First Amendment claim, the complaint states only that Defendants have violated the "First . . . Amendment" (Compl. ¶ 55), and that they "conspired to deprive [Guttilla] of her First . . . Amendment rights" (*id.* ¶ 73). The complaint also includes, in the title of the first cause of action, the words "Freedom of Speech and Association," and, in other parts of the complaint, allegations that Defendants "den[ied] [Guttilla] her rights to free speech and assembly . . . and freedom of the press from prior restraint" (*id.* ¶ 47), and that "Defendants' purpose was to . . . deny [Guttilla] her lawful and protected rights to freedom of speech" (*id.* ¶ 45). Guttilla fails to allege any facts to substantiate these conclusory allegations—such as, for example, that her speech played a substantial part in the Defendant's decision to terminate her employment. *See Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 780-81 (2d Cir. 1991) (holding that, in order to prevail on First Amendment retaliation claim, a plaintiff must show that "the speech played a substantial part in the employer's adverse employment action; *i.e.*, that the adverse action would not have occurred *but for* the employee's protected actions" (emphasis in original)).

Finally, Guttilla alleges nothing to support a Seventh Amendment claim; she merely lists that amendment in the complaint as a source of law purportedly violated by Defendants. (Compl. ¶¶ 1, 55.) In any event, the Seventh Amendment "has not . . . been applied to the States through the Fourteenth Amendment and hence does not require that jury trials be held in proceedings in State tribunals." *GTFM, LLC v. TKN Sales, Inc.*, 257 F.3d 235, 240 (2d Cir. 2001) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 418 (1996)). Therefore,

construing Guttilla's complaint to allege that her state employment proceedings violated the

Seventh Amendment, the Court holds that this claim is not cognizable.[15]

In sum, Guttilla has failed to state a plausible claim that any of the Defendants are liable

under § 1983 for violating her constitutional rights.  Accordingly, her § 1983 claims are

dismissed in their entirety.

**B.     42 U.S.C. §§ 1985 and 1986**

The complaint also cites, in passing and without elaboration, subparts (2) and (3) of 42

U.S.C. § 1985, which prohibit conspiring to interfere with a person's civil rights, and § 1986,

which prohibits failing to prevent such a conspiracy.  (Compl. ¶¶ 1, 55.)  Because Guttilla has

failed to properly allege a violation of her civil rights, the Court must also dismiss her claims

under § 1985.  *See O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d 413, 426 (S.D.N.Y.

2004) ("In the absence of any claim establishing a violation of civil rights, the court must also

dismiss claims of conspiracy brought under § 1985.").  Guttilla's inability to state a claim under

§ 1985 is fatal to her § 1986 claim, *see Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d

1085, 1088 (2d Cir. 1993) ("[A] § 1986 claim must be predicated upon a valid § 1985 claim."),

and therefore the § 1986 claim is dismissed as well.

**C.     Violations of Criminal Statutes**

Guttilla alleges that Defendants violated various criminal statutes: 18 U.S.C. § 1501

(assault on process server), § 1505 (obstruction of proceedings before departments, agencies, and

committees), § 1512 (tampering with a witness, victim, or informant), § 1513 (retaliating against

---

[15] Guttilla may attempt to assert a Sixth Amendment confrontation clause claim as well.  (Compl. ¶ 30.)  The Sixth Amendment does not apply to the context of a civil employment dispute.  *See United States v. Ward*, 448 U.S. 242, 248 (1980) ("[T]he protections provided by the Sixth Amendment are available only in 'criminal prosecutions.'").

a witness, victim, or informant), § 1341 (mail fraud), § 1343 (wire fraud), § 241 (conspiracy against rights), § 242 (deprivation of rights under color of law), and § 641 (embezzlement of public money, property, or records).  (Compl. ¶ 1.)  The complaint also lists 18 U.S.C. § 1515, which merely defines certain terms used in other parts of Title 18.  (*Id.*)  Generally, violations of Title 18 may not serve as the basis for a civil cause of action unless the specific statute includes an express or implied private right of action.  *See Cort v. Ash*, 422 U.S. 66, 79 (1975).  None of the provisions cited by Guttilla contains an express private right of action and such a right is not implied from the language of the statutes.  *See Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) (summary order) (no private right of action for 18 U.S.C. §§ 241, 242); *Official Publ'ns, Inc. v. Kable News Co.*, 884 F.2d 664, 667 (2d Cir. 1989) (no private right of action for 18 U.S.C. §§ 1341, 1343); *Bender v. City of New York*, No. 09 Civ. 3286 (BSJ), 2011 WL 4344203, at *2 (S.D.N.Y. Sept. 14, 2011) (no private right of action for 18 U.S.C. §§ 1512, 1513); *Townsend v. Dordofsky*, No. 13 Civ. 1603 (MAD/ATB), 2014 WL 1572884, at *3 (N.D.N.Y. Apr. 18, 2014) (no private right of action for 18 U.S.C. § 1501); *Mills v. Lumplow*, No. 04 Civ. 00005 (A)(M), 2009 WL 2606240, at *7 (W.D.N.Y. Mar. 31, 2009) (no private right of action for 18 U.S.C. § 1505), *report & rec. adopted*, 2009 WL 2591762, *aff'd*, 391 F. App'x 948 (2d Cir. 2010); *Ali v. Timmons*, No. 04 Civ. 164E, 2004 WL 1698445, at *2 (W.D.N.Y. July 26, 2004) (no private right of action for 18 U.S.C. § 641).  Accordingly, these claims are dismissed.

**D.    State Law Claims**

 Guttilla alleges a litany of claims under New York law.  "[I]t is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it dismisses the federal claims prior to trial."  *Pitchell*, 13 F.3d at 549.  Therefore, because Guttilla does not have any viable federal claims, the Court declines to exercise supplemental jurisdiction over her state law claims.

21

*See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

## IV.     Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and the complaint is dismissed.  Guttilla's request for leave to file an amended complaint (Opp. at 69) is also GRANTED.  *See* Fed R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend the complaint] when justice so requires.").  Any amended complaint shall be filed on or before March 4, 2015.

The Clerk of Court is directed to close the motions at Docket Numbers 16, 22, 24, and 32.

SO ORDERED.

Dated:  February 3, 2015
           New York, New York

_____
                J. PAUL OETKEN
            United States District Judge

A copy of this Opinion and Order was mailed to the *pro se* party.