UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                            :

LISA GUTTILLA,                    :
                            :

                Plaintiff,    :
                            :        14-CV-156 (JPO)

          -v-            :
                            :    OPINION AND ORDER

CITY OF NEW YORK, et al.,    :
                            :

               Defendants.  :
                            :
-------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

      Lisa Guttilla, proceeding *pro se*, claims that various individuals and institutions violated federal and state law during disciplinary proceedings in the New York City school system after accusations emerged that she had inappropriate sexual contact with a student.  She filed suit on January 10, 2014.  (Dtk. No. 1.)  This Court dismissed the Complaint with leave to amend on February 3, 2015.  (Dkt. No. 50.)  *See Guttilla v. City of New York*, No. 14-CV-156, 2015 WL 437405, at *11 (S.D.N.Y. Feb. 3, 2015).  Guttilla filed an Amended Complaint on March 4, 2015.  (Dkt. No. 51.)  Defendants moved to dismiss in early May 2015 under Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 60, 64, 68, 70.)  For the following reasons, the motions are granted and the case is dismissed.

## I.    Discussion

      A full description of the facts and applicable legal standards appears in the Court's previous opinion in this case.  *Guttilla*, 2015 WL 437405, at *1-4.  The Court accepts "all allegations in the complaint as true and draws all inferences in the non-moving party's favor," construing the complaint liberally as befits a *pro se* plaintiff.  *Id.* at *3-4 (internal quotation

marks and citations omitted).  "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* at \*3 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Amended Complaint is largely a verbatim copy of the original complaint.  It does, however, contain revisions from the original complaint, and Guttilla's opposition to the motions to dismiss contains new legal theories.  The Court takes each in turn, considering whether the revisions alter its earlier analysis of Guttilla's claims and whether the new claims and legal theories can survive the motions to dismiss.

### A.    Revisions to the Complaint

The Amended Complaint differs from the original Complaint in four significant respects.  First, it asserts that Guttilla was dismissed because "she is a lesbian" and would have been vindicated "but for the fact that [she] is a lesbian."  (*E.g.* Dkt. No. 51 ¶¶ 10, 32-33, 35-36, 40-41, 43-44, 48, 66).  It also asserts anew that the Defendants worked jointly "as a partnership to harm, belittle, and silence Plaintiff."  (*Id.* ¶ 29; *see, e.g.*, *id.* ¶¶ 33, 45.)   These allegations are purely conclusory, with no supporting factual content.  They do not affect the Court's earlier analysis.

Second, the Amended Complaint claims that Defendants violated Guttilla's Fourth Amendment rights.  (*Id.* ¶¶ 1, 5, 68-69, 86.)  The Amended Complaint does not specify a basis for a Fourth Amendment claim; the constitutional provision is simply listed along with others, like the Seventh Amendment, as a "source of law purportedly violated by Defendants."  *Guttilla*, 2015 WL 437405, at \*10.  It also contains no allegation of an unreasonable search, seizure, or other Fourth Amendment violation.  *See Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (identifying the elements of a Fourth Amendment malicious prosecution claim in New York).

Third, the Amended Complaint contains a slightly more fulsome description of Guttilla's narrative that she was falsely accused of sexual abuse in an attempt to extort money from her. (*Id.* ¶¶ 31, 33, 38, 46; *see* Dkt. No. 78 at 3.)  This description goes to what Guttilla calls the "triable material fact here": "if all the evidence concerning Plaintiff's character, that she is a lesbian but also in a long-term relationship, was presented along with her claim of innocence, would she be terminated?"  (Dkt. No. 70 at 31.)

In essence, Guttilla has marshalled new allegations to attack the *result* of her hearings before the school system.  But these allegations do not affect the viability of her legal claims. They do not affect her procedural due process claim, which focuses on the process given rather than the outcome reached.  *Guttilla*, 2015 WL 437405, at *6-9.   The allegations do not suggest that the private defendants acted under color of state law, nor that the Department Defendants violated her rights as part of a pattern or practice.  *Id.* at * 5-6.  And they do not satisfy the requirements of her other claims.  *Id.* at *9-11 (explaining the deficiencies in Guttilla's abuse of process, equal protection, First Amendment, Seventh Amendment, conspiracy, and criminal claims).

Of particular note is Gutilla's 42 U.S.C. § 1983 equal protection claim.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015) (explaining that § 1983 equal protection claims should be analyzed similarly to Title VII claims); *see also Flaherty v. Massapequa Public Schs.*, 752 F. Supp. 2d 286, 294-95 (E.D.N.Y. 2010), *aff'd*, 462 F. App'x 38 (2d Cir. 2012) (suggesting that a "person perceived as homosexual is in a protected class for equal protection purposes" and applying the Title VII framework).  Reading Guttilla's complaint liberally, she emphasizes that the Court should infer discrimination on the basis of sexual orientation, because the probable cause decisions to suspend her were made without "a scintilla"

of factual corroboration.  (Dkt. No. 51 ¶ 49; *see id.* ¶ 10.)  In Guttilla's view, Defendants must

have jumped to the conclusion that a lesbian teacher was likely to engage in sexual misconduct

with a female student.  (Dkt. No. 51 ¶ 35; Dkt. No. 79 at 32.)  The records from the probable

cause hearings, attached as exhibits to the Amended Complaint, belie the basis for the proposed

inference.  (*See, e.g.*, Dkt. No. 51-2 at 12-16 (describing the school district's investigation and

findings)).  *Guttilla*, 2015 WL 437405, at *1-2.  For example, the arbitrator's opinion from the

first probable cause hearing relies on the "undisputed" fact that Guttilla was "charged criminally

with committing Sexual Abuse in the Third Degree on several occasions in January 2010."  (Dkt.

No. 51-3 at 9).

   To be plausible, Guttilla's proposed inference cannot solely rest on the absence of

support for the arbitrator's decisions.  And the Amended Complaint contains no other allegations

to support this claim.  The inference of intentional discrimination sought by Guttilla is not

plausible.  *See Vega*, 801 F.3d at 86-87 (noting that a court may rely on its "judicial experience

and common sense" to determine "whether the well-pleaded factual allegations *plausibly* give

rise to an inference of unlawful discrimination" (citations and internal quotation marks omitted)).

Without that inference, Guttilla lacks even "minimal support for the proposition that the

employer was motivated by discriminatory intent" or that the employer treated Guttilla

differently due to her sexual orientation.  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d

Cir. 2015).

   Fourth, Guttilla repeatedly argues that the arbitrator in her case lacked authority under

state law to suspend her.  (*E.g.* Dkt. No. 51 at 7, Dkt. No. 79 at 20.)  Under New York Education

Law § 3020-a(1), she notes, a probable cause determination must be made by a school board,

rather than an arbitrator.  That probable cause determination, however, is the determination *to*

*bring* charges.  The arbitrator here, pursuant to the union's agreement with the Department of Education under New York Education Law § 3020(4), was empowered to make the probable cause determination to suspend Guttilla on the charges brought by the Department.  (Dkt. No. 71.)

### B.    Arguments in the Opposition

The Court reads Guttilla's opposition to the motions to dismiss to raise two new theories of relief.

First, she asserts a stigma-plus claim—"a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest . . . without adequate process."  (Dkt. No. 79 at 10.)  *Segal v. City of New York*, 459 F.3d 207, 209 n.1 (2d Cir. 2006) (citation and internal quotation marks omitted).  A stigma-plus claim, however, is a version of a procedural due process claim.  "[T]he availability of adequate process defeats a stigma-plus claim."  *Id.* at 213.  And as discussed in the Court's prior opinion, Guttilla received adequate process for the deprivation, in light of hearings available to her both pre- and post-termination. *Guttilla*, 2015 WL 437405, at *7-9 (finding that Guttilla's pre-suspension hearings and the availability of a post-resignation Article 78 hearing protected Guttilla's property interest in her tenured position); *cf. Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011) (explaining that an Article 78 hearing is adequate process to protect the reputational interests of an at-will government employee).

Second, Guttilla asserts that she was deprived of her substantive due process rights.  (Dkt. No. 79 at 28-31.)  "[I]nterests related to employment are generally not protected under substantive due process because they do not implicate fundamental rights, such as the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and

family life." *Grasson v. Bd. of Educ. of Town of Orange*, 24 F. Supp. 3d 136, 149 (D. Conn. 2014) (Scheindlin, J.) (internal quotation marks omitted) (citing *Tessler v. Paterson*, 451 F. App'x 30, 32-33 (2d Cir. 2011)); *see Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (noting that where "a specific constitutional provision" like procedural due process "prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process"). Even if the Due Process Clause does protect New York tenured teachers' employment rights, it does so only when the infringement is "arbitrary in the constitutional sense": "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Grasson*, 24 F. Supp. 3d at 146 (internal quotation marks omitted) (citing *Bolmer v. Oliveira*, 594 F.3d 134, 142 (2d Cir. 2010)). The allegations here fail to meet that high bar.

## II.    Conclusion

After a thorough review of Guttilla's submissions, the Court concludes that the Amended Complaint adds few new non-conclusory allegations, and those additional allegations do not affect the Court's prior analysis.

Accordingly, the motions to dismiss are GRANTED for the foregoing reasons as well as the reasons set forth in the Court's Opinion and Order of February 3, 2015. *See Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316-17 (S.D.N.Y. 2015) (collecting cases that apply the law of the case from one complaint to a similar amended complaint). This dismissal does not reach the merits of Guttilla's state-law claims. Here, as before, those claims are dismissed because "the Court declines to exercise supplemental jurisdiction" over them. *Guttilla*, 2015 WL 437405, at *11.

The Clerk of Court is directed to close the motions at Docket Numbers 60, 64, 68, and

70, and to close this case.

SO ORDERED.

Dated:  March 29, 2016
        New York, New York

_____
            J. PAUL OETKEN
        United States District Judge

COPY MAILED BY CHAMBERS TO *PRO SE* PARTY